IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

John Gawron, III,

        Plaintiff,

v.

Belmont County, Ohio, et al.,

        Defendants.

Case No. 2:20-cv-5339

Judge Graham

Magistrate Judge Jolson

Opinion and Order

Plaintiff John Gawron, III brings this action under 42 U.S.C. § 1983 for alleged deliberate indifference of serious medical needs while he was held in custody at the Belmont County jail. Named as defendants are Belmont County, Ohio, the Belmont County Sheriff, John Doe Correction Officers, and John Doe inmates.

This matter is before the court on the unopposed motion of Belmont County and the Belmont County Sheriff to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, the motion is granted in part and denied in part.

I.     **Allegations**

Gawron alleges that he was arrested on October 11, 2018 in Belmont County on state law charges relating to what the complaint characterizes as pedophilia. The Belmont County Sheriff's Office held him custody at the county jail for an unspecified period of months.

Gawron alleges that for the first nine days at the jail he was held in a cell near the intake area and was not provided with access to a telephone or a shower.

After the first nine days, Gawron was allegedly moved to a holding area where he was chained for nineteen days to a metal bench. He was given a mat to sit and sleep on while chained to the metal bench. Gawron alleges that he was denied immediate or reasonable access to a bathroom and to drinking water. He claims that he was required to wait unreasonable periods of time to use the bathroom and to receive drinking water.

Gawron alleges that during the nineteen period, the John Doe corrections officers hit, kicked, threatened, insulted, and spat upon Gawron, whose alleged criminal conduct was the subject of much media attention in Belmont County. Gawron further alleges that the corrections officers

1

caused and allowed the John Doe inmates to hit, kick, threaten, insult, and spit upon Gawron, as well as to steal from him.

According to the complaint, Gawron was moved to a cell after the nineteen day period, but he was regularly returned and chained to the metal bench in the holding area. While shackled to the metal bench, he was subjected to the same physical and verbal abuse by corrections officers and other inmates as he had been during the nineteen period. He was also denied reasonable access to a bathroom and drinking water during the periods in which he was chained to the metal bench.

Gawron lastly alleges that he requested but was denied medical attention for depression, anxiety, alcoholism and post-traumatic stress disorder while incarcerated at the Belmont County jail.

The complaint asserts five causes of action: (1) a § 1983 claim against the Belmont County Sheriff and the John Doe corrections officers for deliberate indifference to serious medical needs; (2) a § 1983 claim against the County and Sheriff for failure to adequately train corrections officers and for maintaining a policy or practice approving of unlawful conduct by corrections officers against inmates; (3) intentional infliction of emotional distress against the Sheriff and John Doe corrections officers; (4) assault and battery against the Sheriff and John Doe inmates; and (5) conversion against the Sheriff and John Doe inmates.

## II.     Standard of Review

When considering a motion under Rule 12(b)(6) to dismiss a pleading for failure to state a claim, a court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court should construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. *Iqbal*, 556 U.S. at 679; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Twombly*, 550 U.S. at 555-56.

Despite this liberal pleading standard, the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555, 557 ("labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do," nor will "naked assertion[s]" devoid of "further factual enhancements"). The plaintiff must provide the grounds of his entitlement to relief "rather than a blanket assertion of entitlement to relief." *Twombly*, 550 U.S. at 556 n.3. Thus, "a court

2

considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

When the complaint does contain well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Though "[s]pecific facts are not necessary," *Erickson*, 551 U.S. at 93, the factual allegations must be enough to raise the claimed right to relief above the speculative level and to create a reasonable expectation that discovery will reveal evidence to support the claim. *Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555-56. This inquiry as to plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'– 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. Discussion

#### A. Official Capacity Claim against the Sheriff

In the motion to dismiss, the Sheriff argues that the complaint does not plead any facts to suggest that the claims are being brought against the Sheriff in his individual capacity. Plaintiff, who is represented by legal counsel, has not responded to the motion. Upon review of the complaint, the court agrees that the claims are directed against the Sheriff in his official capacity. The complaint does not allege that the Sheriff was personally involved in the conduct against Gawron. *See Flagg v. City of Detroit*, 715 F.3d 165, 174 (6th Cir. 2013) ("Under § 1983, there is no *respondeat superior* or vicarious liability. . . . When suing an individual actor . . . for constitutional violations under § 1983, a plaintiff must demonstrate that the actor 'directly participated' in the alleged misconduct, at least by encouraging, implicitly authorizing, approving or knowingly acquiescing in the misconduct, if not carrying it out himself.") (internal quotation marks omitted). The complaint expressly alleges that it was the John Doe corrections officers who engaged in the alleged deliberate indifference and the alleged abuse of plaintiff.

The court thus will construe the complaint as asserting only an official capacity claim against the Sheriff. Such an official capacity claim is treated as a claim against the County. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985); *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir. 1996)

(affirming a district court's dismissal of official capacity claims against school officials "because a suit against an official of the state is treated as a suit against the municipality").

### B.     *Monell* Claim against the County

The County argues that the complaint fails to state a claim that the Sheriff had a policy of allowing corrections officers to engage in the alleged constitutional violations.  Under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690–95 (1978), to recover against Belmont County, plaintiff "must show that his civil rights were violated pursuant to and as a direct result of the county's official policy or custom."  *Napier v. Madison Cnty.*, 238 F.3d 739, 743 (6th Cir. 2001).

The County contends that the complaint's allegations concerning a policy are too formulaic and conclusory to survive a motion to dismiss.  The court disagrees.  The complaint alleges that it was the known practice or custom of officers in the Sheriff's Office to engage in and allow abuse of individuals, like Gawron, who were accused of being a pedophile.  Specifically, the complaint alleges that Gawron was placed in an area – the holding area – where corrections officers and inmates could have access to hit, kick, threaten, insult and spit upon him.  Gawron was allegedly subjected to mistreatment in the holding area for a nineteen period, and, even after he was placed in an individual cell, he was regularly brought back to the holding area so that corrections officers and inmates could take physical and verbal action against him.

The court finds that these allegations are sufficient to state a *Monell* claim.  *See Napier*, 238 F.3d at 743 (plaintiff must show that an unconstitutional custom existed, that the custom was connected to the County, and that the custom caused his constitutional violation) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985)).

### C.     State Law Claims

The complaint asserts claims for intentional infliction of emotional distress, assault and battery, and conversion against the Sheriff.  The court finds that the Sheriff and County are entitled to statutory immunity against these state law claims.

Belmont County is a political subdivision.  O.R.C. 2744.01(F).  It is immune from liability against state law claims for injury caused by an employee in connection with a governmental function.  O.R.C. § 2744.02(A)(1).  The operation of a county jail is a governmental function.  O.R.C. 2744.01(C)(2)(h); *Hiles v. Franklin Cnty. Bd. of Commrs.*, 2005-Ohio-7024, ¶ 34, as amended *nunc pro tunc* (Jan. 5, 2006); *Buoscio v. McFaul*, No. 78758, 2001 WL 898426, at *5 (Ohio Ct. App. Aug. 2, 2001).

4

None of the exceptions to statutory immunity apply to the fact pattern of this case. The only exception which might potentially apply is O.R.C. § 2744.02(B)(4), which creates an exception for loss "caused by the negligence of employees [of a political subdivision] and that occurs within or on the grounds of buildings that are used in connection with the performance of a governmental function." However, this exception is not applicable to injuries sustained in "jails, places of juvenile detention, workhouses, or any other detention facility." *Id.*; *Buoscio*, 2001 WL 898426, at *1.

Accordingly, the County is entitled to statutory immunity with respect to the state law claims.

## IV. Conclusion

For the reasons stated above, the motion of Belmont County and the Belmont County Sheriff to dismiss (doc. 16) is GRANTED IN PART and DENIED IN PART. It is granted with respect to plaintiff's state law claims and denied with respect to plaintiff's *Monell* claim under § 1983.

s/ James. L. Graham  
JAMES L. GRAHAM  
United States District Judge

DATE: June 11, 2021