# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **JOHN GAWRON, III**, | |
| Plaintiff, | Case No. 2:20-CV-5339 |
| v. | Judge Graham |
| **BELMONT COUNTY SHERIFF'S DEPT., ET AL.**, | Magistrate Judge Jolson |
| Defendants. | |

## OPINION AND ORDER

Plaintiff John Gawron claims to be the victim of appalling and allegedly unconstitutional conduct while awaiting trial at Belmont County, Ohio Jail ("BC Jail"). He claims to have been shackled to a bench for days without timely access to a bathroom or drinking water and denied access to his medications. Equally bad, he claims to have been subject to abuse by other inmates to the corrections officers' indifference or amusement. Pending before the Court is Plaintiff's motion for summary judgment, Doc. 35, and Defendant Belmont County's motion for summary judgment, Doc. 36.

### I.     Background

Plaintiff joined the BC Jail community on October 11, 2018 following his arrest for one charge of pandering sexually oriented matter involving a minor, one charge of rape, and three charges of illegal use of minor in nudity oriented material. He transferred jails several times during the pendency of his criminal case. Only Plaintiff's residency at BC Jail is relevant here. He was housed at BC Jail on three occasions: (1) October 11, 2018 to December 13, 2018; (2) September 6, 2019 to September 11, 2019; and (3) December 23, 2019 to March 23, 2020.

1

### A. Housing Conditions

Plaintiff alleges that he experienced unconstitutional housing conditions at BC Jail. His stay at BC Jail started comfortably enough – over a week in a holding cell with unrestricted access to a toilet, drinking water, and a nonfunctioning phone.[1]  Gawron Dep. at 12:3-11. The nonfunctioning phone was supposed to be remedied by use of a cordless phone provided by corrections officers, but Plaintiff was allegedly refused this accommodation. *Id.* at 12:12-14. Plaintiff further asserts he was denied a shower during this period. *Id.* at 13:11-14.

Then Plaintiff's luck turned for the worse. He asserts that after being removed from the holding cell, he spent two days chained by his ankle to a holding cell door by two three-foot shackles linked together. *Id.* at 14:3-11. Plaintiff had a mat to lie down on and had to ask for water and to go to the restroom. *Id.* at 14:24-16:3. He asserts his requests were not always timely met. *Id.*

Following his stay at the holding cell door, he was chained by his ankle to a metal bench in the booking area by a three-foot shackle. *Id.* at 17:18-22. There he stayed for roughly two weeks.[2] Unsurprisingly, life shackled to a bench is unpleasant. Plaintiff allegedly had to wait half an hour to an hour for drinking water. *Id.* at 19:23-20:1. He intentionally dehydrated himself so as to need the restroom less frequently, which he was permitted to visit four to five times a day. *Id.* at 67:5-14. Even just existing was difficult. Constant sitting caused Plaintiff to have a sore back, buttocks, and legs. *Id.* at 75:5-12, 85:19-22. Plaintiff asserts that his back remains sore to this day. *Id.* at 85:13-15.

---

[1] Plaintiff alleges he was in the holding cell for approximately nine days whereas Belmont County asserts it was 12 days. Gawron Dep. at 11:23-12:2; Galownia Decl. at ¶ 41.
[2] Plaintiff alleges he was chained to the bench for approximately 16 days whereas Belmont Countys assert it was 13 days. Gawron Dep. at 17:19-22; Galownia Decl. at ¶ 45.

Nights were no easier. Plaintiff had a mat and sheet with which to sleep. *Id.* at 18:10-16. But the blazing lights of the booking area were constantly on. *Id.* at 71:9-14. When sleep was found, it could be interrupted by a blast of frigid winter air emanating from an exterior door located across from the bench. *Id.* at 63:14-21. Moreover, the shackle would tighten around Plaintiff's ankle as he tossed and turned in his sleep, causing his foot to go numb and cramp. *Id.* at 69:17-22. Some corrections officers would wait twenty to thirty minutes to loosen the shackles after being requested. *Id.* at 70:4-16.

### B. Access to Medication

On October 11, 2018, an inmate intake form was completed for Plaintiff. *See* Doc. 35-3 at 2-3. The form shows that Plaintiff had been treated for depression and was taking medication, specifically "Prozah, ? something else." *Id.* Plaintiff was actually taking four medications – Vistaril, Trazodone, Prozac, and Naltrexone – to treat this depression, anxiety, post-traumatic stress disorder, and alcoholism. Gawron Dep. at 31:2-20, 49:6-12. BC Jail verified Plaintiff's prescriptions on October 30, 2018 and arranged for "Judith" of Southeast Mental Health to pick them up. Doc. 35-3 at 4-5. Judith could not pick up the medications because there was a $35 copay. *Id.* at 5. Instead, on November 15, 2018 Plaintiff saw Southeast Mental Health and a new proscription for Prozac was written. *Id.* at 13. Plaintiff started to receive his medication on November 17, 2018 and continued to receive it until he was transferred out of BC Jail on December 13, 2018. *Id.* at 14-15.

When Plaintiff was transferred back to BC Jail on December 23, 2019, he was again denied medication. BC Jail first sent a referral to Southeast Mental Health on January 13, 2020 requesting Zoloft for Plaintiff. *Id.* at 9. On January 28, 2020, Southeast Mental Health responded that they would not prescribe medication to Plaintiff because he would go to prison before they can see him.

3

*Id.* at 6. Despite this, on February 18, 2020, BC Jail sent a referral requesting Prozac. *Id.* at 10. Plaintiff did not receive medication for the remainder of his time at BC Jail.

### C. Abuse

Plaintiff alleges that he was abused by the other inmates at BC Jail. He asserts that inmates threatened and stole items from him, kicked him while he was shackled to the bench, and spat on him. Gawron Dep. at 34:12-35:8., 35:17-24, 52:12-17, 82:12-17. The corrections officers either ignored or laughed at this abuse. *Id.* at 34:12-35:8, 52:18-53:6, 82:18-21. On one occasion when inmates were being transported in a van, an inmate headbutted Plaintiff. *Id.* at 53:10-20. A corrections officer witnessed the assault, but did not take any action. *Id.* at 53:22-24.

### D. Procedural History

On October 10, 2020, Plaintiff filed the current action. The complaint asserts five causes of action: (1) a § 1983 claim against the Belmont County Sheriff and the John Doe corrections officers for deliberate indifference to serious medical needs; (2) a § 1983 claim against Belmont County and the Sheriff for failure to adequately train corrections officers and for maintaining a policy or practice approving of unlawful conduct by corrections officers against inmates; (3) intentional infliction of emotional distress against the Sheriff and John Doe corrections officers; (4) assault and battery against the Sheriff and John Doe inmates; and (5) conversion against the Sheriff and John Doe inmates. The Ohio Department of Medicaid and Ohio Department of Rehabilitation & Correction are named in the complaint for their possible subrogation and/or reimbursement interest.

On June 9, 2021, the Court granted the Ohio Department of Rehabilitation and Correction's unopposed motion to dismiss, removing it as a party to the case. Doc. 17. On June 11, 2021, the Court granted in part Belmont County's unopposed motion to dismiss. Doc. 18. The Court found

that Plaintiff failed to plead a claim against the Belmont County Sheriff in his individual capacity and that the Sheriff and Belmont County are entitled to statutory immunity on Plaintiff's state law claims. *See generally id*. The Court further found that Plaintiff adequately alleged a § 1983 claim against Belmont County. *Id.* at 4.

Now pending before the Court are cross-motions for summary judgment filed by Plaintiff and Defendant Belmont County on Plaintiff's § 1983 claim against Belmont County.

## II. Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is proper if the evidentiary materials in the record show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Longaberger Co. v. Kolt*, 586 F.3d 459, 465 (6th Cir. 2009). The moving party bears the burden of proving the absence of genuine issues of material fact and its entitlement to judgment as a matter of law, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case on which it would bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005).

The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original); *see also Longaberger*, 586 F.3d at 465. "Only disputed material facts, those 'that might affect the outcome of the suit under the governing law,' will preclude summary judgment." *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008) (quoting *Anderson*, 477 U.S. at 248). Accordingly, the nonmoving party must present "significant probative evidence"

to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).

A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. *Daugherty*, 544 F.3d at 702; *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994). Rather, in reviewing a motion for summary judgment, a court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009).

### III. Analysis

Before the Court can reach the merits of Plaintiff's § 1983 claims against Belmont County, it must assure compliance with the Prison Litigation Reform Act ("PLRA"). The PLRA prohibits federal-law claims premised on prison conditions by a "prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 USC § 1997e(a). A "prisoner" for purposes of the PLRA includes persons accused of violations of criminal law who are incarcerated in a facility. 42 USC § 1997e(h). The purpose of exhaustion is to "promote administrative redress, filter out groundless claims, and foster better prepared litigation of claims aired in court." *Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 222 (6th Cir. 2011)

6

(quoting *Porter v. Nussle*, 534 U.S. 516, 528 (2002)). The PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 94-95 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ." *Id.* at 90.

Non-exhaustion under the PLRA is an affirmative defense, which places the burden of proof on a defendant. *Troche v. Crabtree*, 814 F.3d 795, 798 (6th Cir. 2016) (citation omitted). Thus, summary judgment is appropriate only if Belmont County establishes the absence of a "genuine dispute as to any material fact" regarding non-exhaustion. *Id.* (citation omitted).

BC Jail's administrative remedies are laid out in two documents – the Belmont County Jail Prisoner Handbook and Belmont County Sheriff's Office Policy Number 12.10. The Prisoner Handbook provides that:

> Any inmate may submit a grievance to the Sheriff and/or Jail Administrator, without fear of reprisal, for anything he/she feels is wrong with the operation or administration of the Belmont County Jail. All grievances shall be submitted on ordinary writing paper containing all facts and shall be confidential.
>
> The sheriff shall give fair and prompt consideration to any grievance and shall take appropriate action on the grievance forthwith. If the prisoner is not satisfied with the action taken by the sheriff in disposing of the grievance, the sheriff shall provide the prisoner with paper, pencil, and envelope. The prisoner may set forth his grievance in writing and his objection to the disposition of the grievance and seal the envelope. The sheriff shall immediately deliver the sealed document to the Administrative Judge of the Common Pleas Court.

Doc. 36-1 at 511.

Policy Number 12.10 creates both an informal and formal grievance process. Under the informal grievance process, an inmate discusses issues with a staff member. Doc. 36-1. If the staff member does not resolve the issue, the grievance is to be passed on to a shift supervisor for action or subsequent referral. *Id.* "If the problem cannot be resolved through informal discussions or the inmate wishes to document the grievance for additional consideration, he/she may submit a written grievance to the grievance officer/board." *Id.*

7

Formal grievances are made in writing and must be submitted within two days of the complained-of event. *Id.* The grievance officer/board must provide a written decision to formal grievances within five days. *Id.* Inmates can appeal the grievance officer/board's decision to the Sheriff, who has five days to make a final decision. *Id.*

Belmont County has presented substantial uncontested evidence that Plaintiff failed to exhaust BC Jail's administrative remedies by not submitting a grievance in writing. Plaintiff asserts only that he and his mother made verbal grievances to corrections officers. Gawron Dep. at 38:13-39:2. He does not claim to have submitted written grievances. *See id*. 38:5-16. Unsurprisingly, the Administrator of BC Jail was unable to find any written grievances from Plaintiff. Galownia Decl. at ¶ 59.

Plaintiff makes two arguments for why his failure to submit a grievance in writing does not preclude consideration of his claim now. First, he argues that Policy Number 12.10 does not "require the filing of written formal grievances as an appeal to ignored informal grievance requests." Doc. 38 at 4-5. In other words, Plaintiff asserts that one way to exhaust BC Jail's administrative remedies is to simply submit a verbal complaint.

The Court disagrees. As an initial matter, the record is unclear whether BC Jail's grievance policy is governed by the Prisoner Handbook, Policy Number 12.10, or both. Regardless, both require, at a minimum, the submission of a written grievance. The only method available under the Prisoner Handbook is to submit a written grievance. And while Policy Number 12.10 permits a grievance to begin as a verbal complaint, it requires a written grievance be submitted "if the problem cannot be resolved through informal discussions."

Second, Plaintiff argues that the PLRA exhaustion requirement does not apply to his case. He asserts that he has no available administrative remedies because he is no longer held at BC Jail.

8

But the PLRA's exhaustion requirement is not limited to prisoners who complain of the conditions of their current facility. So long as the prior facility's administrative remedies are not expressly limited to current inmates, and BC Jail's are not, those administrative remedies are available to former inmates for purposes of the PLRA. *Napier*, 636 F.3d at 223.

### IV. Conclusion

For the reasons stated above, Plaintiff's motion for summary judgment, Doc. 35, is **DENIED** and Belmont County's motion for summary judgment, Doc. 36, is **GRANTED**. Plaintiff's § 1983 claim against Belmont County is **DISMISSED WITHOUT PREJUDICE**. *Boyd v. Corrections Corp. of America*, 380 F.3d 989, 994 (6th Cir. 2004) (stating that dismissal for failure to exhaust nonjudicial remedies under the PLRA is without prejudice).

Remaining in this case are a § 1983 claim against the John Doe corrections officers and state-law claims against the John Doe inmates. The Complaint was filed on October 10, 2020 and discovery closed on April 7, 2022, yet these John Doe defendants remain unidentified. Plaintiff is **ORDERED TO SHOW CAUSE** within fourteen days of the date of this opinion and order why the Court should not dismiss the John Doe defendants for failure to prosecute.

**IT IS SO ORDERED**.

s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: July 14, 2022